KAZEROUNI LAW GROUP, APC
Ryan L. McBride, Esq. (297557)
ryan@kazlg.com
2221 Camino Del Rio S., #101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
*Michael Anthony*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL ANTHONY,<br><br>Plaintiff,<br><br>v.<br><br>TWILIO INC.,<br><br>Defendant. | Case No.: 3:24-cv-02999-RS<br><br>Assigned to the Hon. Richard Seeborg<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT (FIRST REQUEST)**<br><br>Date: January 16, 2025<br>Time: 1:30 p.m.<br>Crtm: 3<br><br>Action Filed: May 17, 2024 |

# NOTICE OF MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT
# (FIRST REQUEST)

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 16, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Richard Seeborg, in Courtroom 3 – 17th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Michael Anthony ("Plaintiff") will and hereby does move this Court, under Federal Rule of Civil Procedure 15(a)(2), for an order granting leave to amend the complaint.

Due, in part, to its integral role in initiating or causing to initiate relentless unlawful telemarketing that has plagued him for years, Plaintiff Michael Anthony ("Plaintiff") filed this action against Defendant Twilio Inc. ("Twilio" or "Defendant") for violations of the Telephone Consumer Protection Act ("TCPA"). In response to the *initial* complaint, Twilio moved to dismiss arguing that Plaintiff failed to allege that the communications at issue were "telephone solicitations." As such, Plaintiff seeks leave to amend to rectify these alleged defects. In making this motion, Plaintiff has not engaged in any undue delay, bad faith or dilatory motive. Plaintiff has also not repeatedly failed to cure deficiencies by amendments previously allowed. Lastly, Twilio will not suffer *any* prejudice by virtue of allowance of the amendment.

///
///
///
///
///
///
///

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, any reply memorandum or other papers submitted in connection with this Motion, the pleadings and other documents filed in this action, any matter of which this Court may properly take judicial notice, and such evidence and argument as may be presented at or before the hearing on this Motion.

DATED: December 9, 2024

                        Respectfully submitted,

                        **KAZEROUNI LAW GROUP, APC**

                        By:   s/Ryan L. McBride
                             RYAN MCBRIDE, ESQ.
                             RYAN@KAZLG.COM
                             ATTORNEY FOR PLAINTIFF

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Michael Anthony ("Plaintiff") filed this TCPA action seeking to hold Defendant accountable for its integral role in initiating or causing to initiate the relentless unlawful telemarketing that has plagued Plaintiff for years. *See* Plaintiff's Complaint ("Compl.") ¶¶ 1, 3. Exasperated by the barrage of telemarketing even though he's been listed on the National Do-Not-Call Registry ("DNC Registry") for two decades, Plaintiff repeatedly contacted Defendant and begged them to stop sending unwanted and unsolicited telemarketing communications, which originated from phone numbers owned and assigned to Defendant. *Id.* at ¶¶ 4, 5, 66. Because a platform provider may be held liable under the TCPA for: (i) being involved in the transmission of unlawful text messaging; and (ii) having actual notice of an illegal use of its platform and failing to take steps to prevent such transmissions, Plaintiff sought to hold Twilio accountable for its unsolicited telemarketing by filing this action. *Id.* at ¶ 21.

In response to the ***initial*** complaint, Twilio filed a motion to dismiss arguing that the complaint allegedly failed to specify the content or dates of most of the alleged calls and text messages for the Court to determine whether such communications could constitute "more than one" "telephone solicitation" within a twelve-month period. *See* ECF No. 28.

Thereafter, Plaintiff endeavored to avoid wasting this Court's valuable judicial resources in having to rule on a motion to dismiss the initial complaint. *See* Declaration of Ryan L. McBride in Support of Plaintiff's Motion for Leave to File An Amended Complaint ("McBride Decl.") ¶ 6. As such, Plaintiff drafted an amended pleading and shared the same with Twilio's counsel. *Id.* Unfortunately, Twilio would not agree to stipulate to an amended pleading without certain wholly unnecessary revisions to the proposed amended pleading. *Id.* at ¶ 7.

Thus, Plaintiff was left with no choice but to file this motion seeking leave to amend the complaint to address the alleged defects raised in the motion to dismiss. *Id.* at ¶ 8.

## II. STATEMENT OF ISSUE TO BE DECIDED

Whether this Court should grant Plaintiff's motion for leave to amend his initial complaint.

## III. STATEMENT OF RELEVANT FACTS

Twilio is a cloud communications company that enables businesses to reach customers around the globe. *See* Compl. ¶ 20. In doing so, Twilio essentially bridges the gap between web-based applications and the telephone network. *Id.* at ¶ 2. In providing this bridge, however, Defendant has been originating illegal robocall traffic. *Id.*

***Less than a year ago***, the FCC determined that Twilio is originating illegal robocall traffic on behalf of one or more of its clients.[1] In their Cease-and-Desist Letter to Twilio, the FCC mandated that Twilio take steps to address the illegal traffic, and take steps to prevent Twilio's network from ***continuing*** to be a source of illegal robocalls.[2] Indeed, the FCC made the following potentially devastating ultimatum: "Failure to comply with the steps outlined in this letter **may result in downstream voice service providers blocking all of Twilio's traffic, permanently.**"[3]

Over two decades ago, Plaintiff registered his Cell Phone on the Do Not Call Registry. *See* Compl. ¶ 66. Pursuant to 47 U.S.C. § 227(c)(3)(F), Defendant is required to check the National Do Not Call Registry ("DNC") before attempting to call. *Id.* at ¶ 67. Nevertheless, as early as June 2021, Plaintiff received text messages from phone numbers assigned to Defendant even though Plaintiff did not provide permission to be contacted and did not have any established business relationship with

---

[1] https://docs.fcc.gov/public/attachments/DOC-390811A1.pdf
[2] *Id.*
[3] *Id.* (emphasis in original).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Defendant. *Id.* at ¶ 68.

After learning through a certain automated robocall surveillance system that Defendant owned the phone numbers that continually contacted him, Plaintiff communicated with Twilio's compliance department and in-house counsel via email and telephone. *Id.* at ¶ 74. Specifically, in the summer of 2021, Plaintiff communicated by email with Twilio's Litigation counsel, Katie Chang as well as lead paralegal, Matthew Gainer. *Id.* at ¶ 75. In these communications, Plaintiff identified his Cell Number and ***repeatedly*** asked that Defendant stop the abusive behavior that originated from multiple phone numbers owned by Twilio. *Id.* at ¶ 76.

Defendant simply refused to implement a system-wide block to his Cell Phone and transmitted, and continued to transmit, countless unlawful telemarketing to his Cell Phone. *Id.* at ¶ 77.

Even though Plaintiff notified Defendant countless times that he registered his Cell Phone with the DNC, Defendant continually harassed him by transmitting unlawful text messages and made illegal calls via phone numbers that are registered to Defendant. *Id.* at ¶ 80. As such, Plaintiff was forced to file this action to stop the unsolicited and unlawful communications initiated by Twilio.

### IV. LEGAL STANDARD

Federal Rule of Civil Procedure 15 governs amendments and is applied liberally. Specifically, "a court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). As such, Rule 15 embraces "the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). And thus, the Ninth Circuit has recognized that the policy permitting amendment is to be applied with "extreme liberality." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted).

A district court "may deny leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Not all of the factors merit equal weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). *See, e.g., DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (stating that "delay, by itself, is insufficient to justify denial of leave to amend"). "Prejudice is the 'touchstone of the inquiry under rule 15(a).' Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence*, 316 F.3d at 1052.

## V. ARGUMENT

Plaintiff respectfully submits that this Court should grant this motion seeking leave to amend as none of the *Foman* factors weigh against the Plaintiff in his effort to facilitate a proper decision on the merits of this case. In essence, Twilio's pending motion to dismiss argues that Plaintiff fails to state a cause of action because he does not allege facts sufficient to establish that he received more than one qualifying "telephone solicitation." Plaintiff respectfully contends that the amended pleading will remedy this alleged defect and that all of the *Foman* factors dictate that this Court should grant leave.

*First*, Plaintiff did not delay in seeking this amendment. Rather, Plaintiff immediately filed this motion when it became clear that the Defendant would not simply stipulate to an amendment under Rule 15(a)(2). Indeed, the Defendant's motion to dismiss the initial pleading was filed very recently and the parties' discussions regarding the stipulation broke down on December 5, 2024.

*Second*, Plaintiff has not engaged in any bad faith or dilatory motive. Rather, Plaintiff simply wants to prevent this Court from having to waste its valuable judicial resources in entertaining Twilio's pending motion to dismiss. In short, Plaintiff can, and will, bolster the allegations to address the arguments raised in the motion to dismiss.

*Third*, Plaintiff has not repeatedly failed to cure deficiencies by amendments previously allowed. In actuality, Plaintiff has **never** sought to previously amend the pleading. Rather, Plaintiff seeks leave to amend his ***initial*** complaint.

*Fourth*, the amendment will not be futile as Plaintiff is able to bolster the allegations in his initial pleading and provide additional examples of unlawful telemarketing.

Moreover, the FCC and various courts across the country have recognized that entities, like Twilio, may be held liable under the TCPA for the type of action alleged in this case. Specifically, the FCC weighed in on the question of whether text broadcasters could be "senders" of text messages under § 227(b)(1) of the TCPA. In 2016, the FCC clarified that "text broadcasters can be liable for TCPA violations" based on an analysis of the "totality of the facts and circumstances surrounding the placing of a particular call." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 88, 90 (2016). In short, the FCC has held that an entity that provides a platform or an application that facilitates calling may be the maker of a call, depending on the level of its involvement. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, at ¶¶ 28–30 (F.C.C. July 10, 2015), appeal resolved, *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018) (setting aside two parts of 2015 declaratory ruling, but leaving this portion undisturbed).

Likewise, several courts have refused to dismiss claims against text broadcasters under the FCC's totality of the circumstances test. *See, e.g., Bauman v. Saxe*, 2019 WL 591439 (D. Nev. Feb. 13, 2019) (refusing to dismiss TCPA claim against transmitter of messages that integrated its hardware and software with seller's to create, sort, and send hundreds of thousands of text message advertisements in an automated manner and strategically scheduled the transmission of the messages and took various other steps to avoid spam filters); *Wick v. Twilio Inc.*, 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) (refusing to dismiss claim against communications service that

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

creates messages for its customers, or chops and reassembles content its customers provide, determines the number from which a message will be sent in order to evade filtering or screening and mask the source of the call, chooses the order and timing of the messages to make sure the volume stays below spam filter thresholds, and automatically sends the messages).

As one court put it, "[t]he 'totality of the circumstances' approach…will not provide easy answers in close cases. But it makes one thing clear: a provider of auto-dialing services cannot blithely sit back and blame his customers for any TCPA violations that result from their use of his service." *Cunningham v. Montes*, 378 F.Supp.3d 741, 747–48 (W.D. Wis. 2019); *see also Hurley v. Messer*, 2018 WL 4927218, at *2 (S.D. W.Va. Oct. 10, 2018) ("whether or not [the defendant] may be held liable will depend upon a totality of the circumstances analysis, which is not appropriate on a motion to dismiss given the allegations in this case."); *Couser v. Pre-paid Legal Services, Inc.*, 994 F.Supp.2d 1100, 1103 (S.D. Cal. 2014) ("Whatever the true and exact relationship between [defendant] and its customers is, the Court finds it all too fact intensive ... to be resolved at the motion to dismiss phase in [defendant's] favor.")

In addition to this basis for holding a provider liable, Courts have found that a provider that has actual notice of an illegal use and fails to take steps to prevent such transmissions will be held liable for TCPA violations. *See Att'y Gen. of Florida v. Smartbiz Telecom L.L.C.*, 688 F. Supp. 3d 1230 (S.D. Fla. 2023) (allowing state, acting as *parens patriae* for its citizens, to proceed against telecom provider that continued to transmit fraudulent calls despite repeated notifications through trace-back requests that it was transmitting illegal calls); *Laccinole v. Apprise, Inc.*, 453 F. Supp. 3d 499, 503 (D.R.I. 2020) (refusing to dismiss claim against company that provided a victim notification service for the state; even if company is a common carrier, it may be liable under the TCPA if it is highly involved in the illegal use of its services, or has actual notice of such use but fails to prevent it); *Linlor v. Five9, Inc.*, 2017 WL 2972447 (S.D.

- 9 -
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Cal. July 12, 2017) (fact question here whether company that provided "customer contact center solutions" was common carrier); *Rinky Dink, Inc. v. Elec. Merch. Sys., Inc.*, 2015 WL 778065, at *4 (W.D. Wash. Feb. 24, 2015); *Report & Order, In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8779–8780, at ¶ 19 (1992).

Based on the foregoing, Plaintiff's requested relief and the amendments are not futile. Rather, Plaintiff simply seeks leave to bolster the initial complaint's allegations and add additional TCPA violations to combat the arguments raised by the motion to dismiss.

*Lastly*, Twillio will not suffer **any** prejudice by virtue of allowance of the amendment. "[T]he consideration of prejudice to the opposing party [ ] carries the greatest weight" in the Court's analysis. *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In determining whether there is prejudice, courts consider whether the amendment would "greatly change the parties' positions in the action, and require the assertion of new defenses." *Phoenix Solutions, Inc. v. Sony Elecs., Inc.*, 637 F. Supp. 2d 683, 690 (N.D. Cal. 2009) (citing *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) (citations omitted).

In this nascent litigation, Twilio cannot show **any** prejudice.

///
///
///
///
///
///
///
///

## VI. CONCLUSION

In response to Twilio's pending motion to dismiss the *initial* pleading, the Plaintiff requests that the Court grant his motion for leave to amend and thereby facilitate an ultimate decision on the merits of this dispute.

DATED: December 9, 2024

                              Respectfully submitted,

                              **KAZEROUNI LAW GROUP, APC**

                              By: *s/Ryan L. McBride*
                                   RYAN MCBRIDE, ESQ.
                                   ryan@kazlg.com
                                   ATTORNEY FOR PLAINTIFF