1  **KAZEROUNI LAW GROUP, APC**
   Ryan L. McBride, Esq. (297557)
2  ryan@kazlg.com
   2221 Camino Del Rio South, Suite 101
3  San Diego, CA 92108
   Telephone: (800) 400-6808
4  Facsimile: (800) 520-5523

5  *Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL ANTHONY,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>TWILIO INC.,<br>　　　　　Defendant. | Case No.: 3:24-cv-02999-RS<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br><u>**Case Management Conference**</u><br><br>Date: April 17, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. Richard Seeborg<br>Classroom: VIDEOCONFERENCE |



Pursuant to the Court's Order Setting Initial Case Management Conference and ADR Deadlines (ECF No. 4), as modified on August 2, 2024 (ECF No. 20), August 13, 2024 (ECF No. 24), October 21, 2024 (ECF No. 27), and December 16, 2024 (ECF No. 30); Rule 26 of the Federal Rule of Civil Procedure; and the Standing Order for All Judges of the Northern District of California, counsel for Plaintiff Michael Anthony ("Plaintiff" or "Mr. Anthony") and counsel for Defendant Twilio Inc. ("Defendant" or "Twilio") (collectively, the "Parties"), hereby submit this Joint Case Management Statement in advance of the April 17, 2025, Scheduling Conference in this action.

**1.　Jurisdiction and Service**

Because this case arises out of alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  No issues exist regarding personal jurisdiction or venue.  No parties remain to be served.

## 2. Facts

<u>Plaintiff</u>: Plaintiff alleges that Defendant violated the TCPA by initiating calls and transmitting telemarketing text messages to his cellular telephone that he registered with the Do Not Call Registry ("DNCR"). Even though Plaintiff notified Defendant and Defendant's legal department countless times that: (i) he personally registered his cell phone with the DNCR; and (ii) it continually originated unlawful robocalls and transmitted unsolicited advertisement via text message without his consent, Defendant nevertheless repeatedly harassed him by transmitting unlawful text messages and making illegal calls via phone numbers that are registered to Defendant. Plaintiff was therefore left with no choice but to file this action to stop the unsolicited and unlawful communications initiated by Twilio.

Less than a year ago, the FCC determined that Twilio was indeed originating illegal robocall traffic on behalf of one or more of its clients.[1] In a Cease-and-Desist Letter sent to Twilio, the FCC mandated that Twilio take steps to address ***the illegal traffic***, and take steps to prevent Twilio's network from ***continuing*** *to be a source of illegal robocalls*.[2] Indeed, the FCC made the following potentially devastating ultimatum: "Failure to comply with the steps outlined in this letter **may result in downstream voice service providers blocking all of Twilio's traffic, permanently**.[3]

Although Plaintiff has been a plaintiff in a mere handful of cases, Defendant attempts to attach the moniker "serial litigant" to Plaintiff to sow doubt over his claims. Even if he was a serial litigant (which he is not[4]), Plaintiff's status as a serial TCPA litigant does not in itself prevent him from being able to state a TCPA claim. *See Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, 367 F. Supp. 3d 93, 115 (S.D.N.Y. 2019); *see also Barton v. LeadPoint, Inc.*, No. 22-35691,

---

[1] https://docs.fcc.gov/public/attachments/DOC-390811A1.pdf
[2] *Id*.
[3] *Id*. (emphasis in the original).
[4] In stark contrast to Plaintiff vindicating his federal statutory rights in a mere handful of cases, one Court noted that a certain plaintiff was indeed a "serial litigant" because that plaintiff "ha[d] filed over 50 lawsuits in this district since December 2014. He has frequently been admonished by the Court for discourteous conduct and for misrepresenting himself as a lawyer, and the Chief Judge of this district has required him to include one such order with any pro se matters he files in this district for three years." *Ewing v Pollard*, 19-CV-855-CAB-BGS, 2020 WL 619532, at * 4, n. 1 (S.D. Cal. Feb. 10, 2020).

2023 WL 4646103, at *2 (9th Cir. July 20, 2023)(holding that "[t]he mere fact that [plaintiff] is a frequent TCPA litigant does not evince bad faith, and there is no other evidence to that effect.").

<u>Defendant</u>: Twilio denies Mr. Anthony's claims. Many of the alleged text messages and calls were not sent or placed through phone numbers associated with Twilio, are facially not telephone solicitations, and/or may not qualify as telephone solicitations due to an established business relationship or consent. Even if the alleged communications were telephone solicitations, Twilio did not place a single call or send a single text message on which Mr. Anthony moors his entire First Amended Complaint ("FAC").

Twilio is a software company that provides protocols and tools enabling ***third-party developers*** to send ***their own*** calls and text messages to ***their own*** distribution lists. Mr. Anthony alleges he received text messages and calls from various third parties that used Twilio's platform to send their messages. Twilio does not and cannot legally cause or control those communications. Twilio's ***customers*** decide whether, when, how, to whom, and what communications they wish to initiate or cause to be initiated to others. Yet through this action, Mr. Anthony seeks to hold Twilio, rather than its third-party customers, responsible for those third parties' alleged violations of the TCPA.

If any of Twilio's customers placed the alleged calls or sent the alleged text messages—***and those communications qualified as telephone solicitations***—Twilio's customers expressly agree in their agreements with Twilio to comply with all applicable law and regulation, and to call or text only those who have consented to be called or texted. To the extent a third-party customer of Twilio violated the TCPA, that third party or third parties did so in violation of express contractual obligations not to do so. In these circumstances, Mr. Anthony cannot establish direct or vicarious liability against Twilio.

Mr. Anthony's reference to the January 2023 FCC letter is inapposite, as that letter is not related to this case at all and the issues are not ongoing. It also arose more than two years ago, not within the last year as Mr. Anthony claims. Regardless, the FCC did not determine anything, let alone that Twilio "initiated" or "caused to be initiated" illegal robocall traffic. Instead, the FCC flagged and specified a handful of potentially unlawful text messages sent by a third party

using Twilio's platform. This allowed Twilio to "investigate" and "effectively mitigate" the identified conduct. More importantly, the letter and issues raised within do not involve any of Twilio's customers who may be implicated by Mr. Anthony's allegations in this lawsuit. And there has been no further activity since Twilio responded to the FCC over two years ago in January 2023. Mr. Anthony is a serial TCPA litigant, although he does not appear to have ever publicly established even a single TCPA violation. He filed and abandoned at least one legal action related to or against Twilio. *See Anthony v. Twilio Inc.*, No. MJ-32247-CV-0000368-2022 (Pa. Commw. Ct.). He filed two other similar TCPA lawsuits in Florida federal court, disposed in his favor largely due to the defendants' failure to appear. *See Anthony v. Brian Mktng. Grp.*, No. 9:24-cv-80800 (S.D. Fla.); *Anthony v. Zage Group, LLC, et al.*, No. 8:23-cv-00788 (M.D. Fla.). And he filed a TCPA class action in this Court, dismissed with prejudice after court-referred mediation. *See Anthony v. Broker Solutions, Inc., et al.*, No. 2:22-cv-09242 (C.D. Cal.). Mr. Anthony also filed, and a federal court dismissed with prejudice, another TCPA class action against the National Republican Congressional Committee. *See Anthony v. Nat'l Republican Cong. Comm.*, No. 2:22-cv-03382 (E.D. Pa.). Therefore, Plaintiff significantly understates his litigation history.

3.  **Legal Issues**

Plaintiff: Plaintiff alleges that Twilio knowingly allowed its customers to harass Plaintiff for years and was intimately involved in this malfeasance thereby violating the TCPA and its regulations. The FCC has held that an entity that provides a platform or an application that facilitates calling may be the maker of a call, depending on the level of its involvement. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, at ¶¶ 28–30 (F.C.C. July 10, 2015), appeal resolved, *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018) (setting aside two parts of 2015 declaratory ruling, but leaving this portion undisturbed); *Bauman v. Saxe*, 2019 WL 591439 (D. Nev. Feb. 13, 2019) (refusing to dismiss TCPA claim against transmitter of messages that integrated its hardware and software with seller's to create, sort, and send hundreds of thousands of text message advertisements in an automated manner and strategically scheduled the transmission of the messages and took various other steps to avoid spam filters).

In addition to being liable if a platform provider is involved with the transmission of unlawful text messaging, Courts hold that a provider that has actual notice of an illegal use and fails to take steps to prevent such transmissions will be held liable. *See Att'y Gen. of Florida v. Smartbiz Telecom L.L.C.*, 688 F. Supp. 3d 1230 (S.D. Fla. 2023) (allowing state, acting as *parens patriae* for its citizens, to proceed against telecom provider that continued to transmit fraudulent calls despite repeated notifications through trace-back requests that it was transmitting illegal calls); *Laccinole v. Apprise, Inc.*, 453 F. Supp. 3d 499, 503 (D.R.I. 2020) (refusing to dismiss claim against company that provided a victim notification service for the state; even if company is a common carrier, it may be liable under the TCPA if it is highly involved in the illegal use of its services, or has actual notice of such use but fails to prevent it); *Linlor v. Five9, Inc.*, 2017 WL 2972447 (S.D. Cal. July 12, 2017) (fact question here whether company that provided "customer contact center solutions" was common carrier).

<u>Defendant</u>: The two primary legal issues in this case are whether the alleged communications from third parties were (1) telephone solicitations and (2) initiated or caused to be initiated by Twilio, *see, e.g.*, ECF No. 31 ("FAC") ¶ 27. Even if the alleged communications were telephone solicitations, because Twilio did not initiate them or cause them to be initiated, they do not give rise to TCPA liability against Twilio.

Plaintiff's sole cause of action under the TCPA is for violation of the TCPA regulations providing "[n]o person or entity **shall initiate any telephone solicitation**[s]" to "residential telephone subscribers" who have registered their phone number on the national do-not-call ("DNC") registry. *See* 47 C.F.R. § 64.1200(c)(2) (emphasis added).

"Telephone solicitation" means the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." *Id*. § 64.1200(f)(15). "[S]uch term does not include a call or message" sent to any person with their prior consent or with whom the sender has an "established business relationship." *Id*. § 64.1200(f)(15)(i)–(ii). Many, if not all, of the alleged calls or text messages do not qualify as telephone solicitations.

Even if they did, the applicable TCPA regulation does not impose additional liability for "causing [a solicitation] to be initiated." If it did, Congress or the FCC would have provided so expressly, as they did in relation to advertisements and telemarketing using an automated telephone dialer or pre-recorded voice. *See* 47 C.F.R. § 64.1200(a)(2) ("initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing").

Regardless, Twilio does not "cause" **any** calls or texts "to be initiated." Twilio in no way controls the content, recipients, or timing of the communications. As a mere Data Processor, rather than a Data Controller, Twilio merely provides protocols and tools on its platform enabling customers to direct the processing of data—and does not control how its customers choose to use Twilio's platform. It has not made, and as a Data Processor cannot lawfully make and implement, decisions about to whom its customers should send communications. Those decisions are made solely by Twilio's customers, the Data Controllers. Accordingly, Twilio "exercises no discernible involvement in deciding whether, when, or to whom" messages are sent, "or what such a [message] says." Rules & Regs. Implementing the TCPA of 1991, 30 FCC Rcd. 7961, 7981 ¶ 32 (2015). Notably, Plaintiff removed allegations from the initial complaint regarding Twilio's alleged involvement in transmitting messages. And Plaintiff's remaining allegations admit Twilio's lack of involvement. Plaintiff acknowledges that Twilio's services "enable" its customers to initiate texts and calls, *see* FAC ¶ 2, a far cry from "initiating" the texts or calls itself, or "causing" that initiation.

As for liability based on actual notice and failure to act, to demonstrate a plaintiff had "sufficient notice of any illegal activity to render it an active participant in that activity," the plaintiff must show that the defendant "received a notice from the FCC regarding illegal activity or other comparable notice." *Kauffman v. Call Fire, Inc.*, 141 F. Supp. 3d 1044, 1049–50 (S.D. Cal. 2015). Mr. Anthony does not and cannot allege that Twilio received notice from the FCC regarding illegal activity directed to Plaintiff's phone number, other comparable notice, or any other notice that it failed to act on.

Twilio is not an "initiator" of its customers' calls or texts messages, does not cause those calls or texts to be initiated, and cannot be subject to liability for the alleged violations under the TCPA. Plaintiff's allegations and arguments to the contrary are not grounded in fact or law.

**4.     Motions**

Plaintiff: On December 16, 2024, the Court issued an ORDER denying [28] Defendant's Motion to Dismiss and granting [29] Motion for Leave to File Amended Complaint. At the appropriate time, Plaintiff shall also file a motion for summary judgment. However, Plaintiff reserves the right to file any motions at a future time.

Defendant: Setting aside whether Twilio initiated or caused to be initiated the phone calls and text messages alleged by Mr. Anthony, Twilio has already determined that many of the alleged communications were not sent through a phone number associated with Twilio, are not facially telephone solicitations, and/or are not telephone solicitations due to an established business relationship or consent. Therefore, after a brief period of discovery, Twilio intends to move for summary judgment on these issues. If necessary, Twilio will file a motion for protective order to preclude unnecessary and disproportionate discovery into Plaintiff's flawed "causing the initiation" theory prior to resolution of these threshold issues of whether the calls and texts were even transmitted through Twilio's platform and, if so, whether they are actionable telephone solicitations or non-solicitations permitted under the TCPA. Twilio reserves its right to bring a motion for sanctions based on the baseless allegations in Mr. Anthony's FAC on these issues.

**5.     Amendment of Pleadings**

The parties do not presently intend to file any motions seeking to add other parties or claims. The parties propose a deadline of June 2, 2025, for amending pleadings.

**6.     Evidence Preservation**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7.  Disclosures**

Plaintiff:  On December 17, 2024, Plaintiff served his Rule 26(a) initial disclosures.

Defendant: Twilio served its Rule 26(a) initial disclosures on February 10, 2025.

**8.  Discovery**

The Parties have informally exchanged discovery related to the alleged violations.  The Parties have begun the process of formal discovery.  The Parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.

Plaintiff: Plaintiff has propounded written discovery in the form of Requests for Admission, Special Interrogatories, and Requests for Production of Documents.  Plaintiff also anticipates deposing the person(s) most knowledgeable or representative(s) pursuant to FRCP 30(b)(6) for the Defendant.  The Plaintiff does not propose limitations or modifications of the discovery rules.

Defendant: Setting aside whether Twilio initiated or caused to be initiated the phone calls and text messages alleged by Mr. Anthony, Twilio has already determined that many of the alleged communications were not sent through a phone number associated with Twilio, are not facially telephone solicitations, and/or are not telephone solicitations due to an established business relationship or consent.  Twilio intends to move for summary judgment on these text messages at the outset.  Accordingly, Twilio anticipates seeking and producing written discovery and documents (including ESI) relating to Mr. Anthony's interactions with the senders of those text messages.

An early resolution related to whether these text messages were transmitted over Twilio's platform and, if so, constituted telephone solicitations would provide for efficient and early resolution of this case.  Twilio does not presently propose limitations or modifications of the discovery rules.

**9.  Class Actions**

N/A

**10.     Related Cases**

N/A

**11.     Relief**

<u>Plaintiff</u>: Plaintiff seeks a minimum of $500 in statutory damages for each violation of the TCPA, and up to $1,500.00 if Defendant's violation of the TCPA is determined to be knowing or willful.

<u>Defendant</u>: Twilio denies that Mr. Anthony is entitled to any of the relief sought. Twilio requests that the Court enter an order dismissing Mr. Anthony's claim with prejudice, awarding costs of suit and attorneys' fees to Twilio, and granting Twilio such other and further relief as the Court deems just and proper.

**12.     Settlement and ADR**

The Parties have engaged in extensive settlement discussions. Unfortunately, the parties have reached an impasse requiring further litigation.

**13.     Other References**

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14.     Narrowing of Issues**

<u>Plaintiff</u>: The Plaintiff maintains that the text messages are telemarketing. Plaintiff does not deem it appropriate to bifurcate issues, claims, or defenses.

<u>Defendant</u>: Twilio does not agree that "certain," unspecified text messages are "telemarketing"—which is irrelevant to the Plaintiff's sole TCPA claim that is limited to "telephone solicitations" to phone numbers registered on the national do-not-call registry. FAC ¶ 101 (citing cases addressing whether text messages were "telephone solicitations").

Twilio has already determined that many of the alleged text messages were not sent through a phone number associated with Twilio, are not facially telephone solicitations, and/or are not telephone solicitations due to an established business relationship or consent. But Twilio does not propose formal bifurcation of issues, claims, or defenses.

**15. Scheduling**

Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

| Expert Designation | August 13, 2025 |
|---|---|
| Rebuttal Expert Designation | September 12, 2025 |
| Discovery cut-off | October 13, 2025 |
| Dispositive Motion Deadline | November 13, 2025 |
| Hearing of Dispositive Motion | December 11, 2025 |
| Final Pre-trial conference | March 19, 2026 |
| Trial | April 7, 2026 |

**16. Trial**

Plaintiff: The case will be tried to a jury and the expected length of the trial will be two days.

Defendant: If this case proceeds to trial, Twilio proposes this case will be tried to a jury and the expected length of the trial will be five days.

**17. Disclosure of Non-party Interested Entities or Persons**

Plaintiff: Plaintiff has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, Plaintiff is unaware of any persons, firms, partnerships, corporations (including parent corporations) or other entities to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

Defendant: Twilio filed its "Corporate Disclosure and Certification of Interested Entities or Persons," as required by Federal Rule of Civil Procedure 7.1 and Civil Local Rule 3-15, on June 17, 2024. ECF No. 8. To the extent any of Twilio's customers sent the alleged text messages or made the alleged phone calls from a phone number associated with Twilio, such customers would have (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**18. Professional Conduct**

The Parties affirm that all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**19. Other matters**

N/A

Dated: April 9, 2025　　　　　　　　**KAZEROUNI LAW GROUP, APC**

　　　　　　　　　　　　　　　　　　*/s/Ryan L. McBride*
　　　　　　　　　　　　　　　　　　Ryan L. McBride
　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*

Dated: April 9, 2025　　　　　　　　**DAVIS WRIGHT TREMAINE LLP**

　　　　　　　　　　　　　　　　　　 */s/James H. Moon*
　　　　　　　　　　　　　　　　　　James H. Moon
　　　　　　　　　　　　　　　　　　*Attorney for Defendant*



## **SIGNATURE CERTIFICATION**

I, Ryan L. McBride, hereby certify that the content of this document is acceptable to all counsels listed above, and that I have obtained their authorizations to affix their electronic signatures to this document.

By:     <u>/s/Ryan L. McBride</u><br>
Ryan McBride, Esq.<br>
*Attorney for Plaintiff*
